UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA JANINE BUTLER, individually and as successor in interest of JACOB KOBER, <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-01011-CDB <br><br> ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS <br><br> (Doc. 9) <br><br> **21-Day Deadline** |

Pending before the Court[1] is the motion of Defendants the California Department Corrections and Rehabilitation ("CDCR"), Kern Valley State Prison ("KVSP"), and Christian Pfeiffer (collectively, "Defendants") to dismiss claims asserted in the first amended complaint ("FAC") by Plaintiffs Sandra Janine Butler, individually and as successor in interest to Jacob Kober ("Decedent"). (Doc. 9). Plaintiffs filed an opposition to the motion to dismiss and Defendants filed a reply. (Docs. 11, 12). The motion was submitted before the undersigned on the record without hearing or oral argument, pursuant to Local Rule 230(g). (Doc. 22).

---

[1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, on December 11, 2025, this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 21).

## I.    **Background**

Plaintiffs filed the operative FAC on October 27, 2025.  (Doc. 7).  The FAC sets forth that, on April 28, 2015, Jacob Kober ("Decedent") was booked as a detainee into Kern Valley State Prison in Delano California.  *Id.* ¶ 23.  On September 19, 2024, he was a cellmate of Matthew Perez, who was in prison for robbery and had previously been charged for attacking a cellmate.  *Id.* ¶ 24.  That day, Perez "finished a telephone call with his wife/girlfriend and was high, irate and belligerent."  Decedent attempted to calm Perez down but Perez attacked Kober with a makeshift weapon and stabbed him multiple times.  The attack extended over a "long" period of time and attracted the attention of other inmates as Decedent called for help.  *Id.* ¶ 25.  During the time of the attack, the correctional officers (named as "Doe" Defendants one through 20), were in the correctional officer's booth and "had shut the doors and windows which was a violation of the [CDCR] Department Operating Manual and the policies and procedures for their jobs because it prevented them  from hearing anything occurring with the prisoners." *Id.* ¶ 16.

During the attack, Decedent "had been screaming for help" but the station windows of "Doe" Defendants one through 20 were "wrongfully closed and [they] could not hear the screaming, or heard the screaming but chose to ignore it."  Other inmates "were also screaming for the ['Doe' Defendants one through 20] to help [Decedent] but the ['Doe' Defendants] could not hear them because of the closed windows."  *Id.* ¶ 27.  During the time of the attack, "Doe" Defendants one through 20 "had not been walking the halls every [30] minutes, which was a violation of the Department Operating Manual and the policies and procedures for their jobs because it prevented them from observing anything untoward occurring with the prisoners."  No such "Doe" Defendant "walked the halls for approximately [one] to 1.5 hours and it was only when the ['Doe' Defendants one through 20] resumed walking the halls at approximately 7:00 p.m. that [Decedent] was discovered on the floor after having bled out from the multiple stab wounds."  *Id.* ¶ 28.  "Around 7:20 p.m., it was reported that jail personnel found [Decedent] unresponsive in a two-man cell with multiple wounds to his body, consistent with an incarcerated-manufactured weapon."  *Id.* ¶ 62.

"Medical staff attempted to perform life-saving measures on [Decedent], who had injuries

consistent with an incarcerated-manufactured weapon." Decedent was "transported to the prison's triage and treatment area for a higher level of care." Decedent was pronounced dead by on-scene paramedics at 7:52 p.m. An "incarcerated-manufactured weapon was found at the scene." *Id.* ¶ 29. Decedent's cause of death was reported as "multiple stab wounds" on September 19, 2024. *Id.* ¶ 63. Prior to being placed in a cell with Decedent, Perez had "previously been housed in solitary confinement due to prior violent and aggressive behavior towards the correction officers and the other inmates." *Id.* ¶ 31.

Plaintiffs allege that staff at KVSP were aware that Perez was mentally unstable and posed a safety risk to Decedent and other prisoners. *Id.* ¶ 32. For instance, an unnamed KVSP employee stated that Perez was known to be highly unstable and had expressed surprise Perez was able to have a cellmate. *Id.* ¶ 33. Prior to the incident, there had been "multiple episodes of violence involving [Perez] which CDCR was well aware of but after which they refused to take action to protect [Decedent." In one prior occasion, Decedent "entered the cell and found [Perez] covered in his own blood from self-inflicted injuries, making his mental instability[] and tendency for violence well known." Despite the fact that "this incident [proved] to CDCR the presence of a weapon within the cell, no action was taken by CDCR to remove [Perez] and [Decedent] was forced to continue to share a cell with him …" *Id.* ¶ 34.

On another occasion, Perez "lunged at [Decedent] in an attempt to harm him." Decedent "tried to reason with [Perez] and calm him down. [Perez] was not detained or removed following this incident either, and [Decedent] was forced to continue sharing a cell with him" until the incident. *Id.* ¶ 35. Perez would become irate and aggressive during phone calls with his wife or girlfriend; the relationship was characterized by frequent breakups and reconciliations. *Id.* ¶ 36. Perez "often used illegal drugs" while at KVSP, which made his mental instability worse. Defendants did not "take any action to get [Perez] mental help, keep him separate from other inmates, or even confiscate his drugs." *Id.* ¶ 37. Decedent "repeatedly shared with his mother" (Plaintiff Butler) and with his girlfriend "how miserable his living situation was and expressed frustration over [Perez's] escalating mental instability." *Id.* ¶ 38.

"On virtually every call," Plaintiff Butler and Decedent's girlfriend "could hear [Perez] in the background yelling and screaming." *Id.* ¶ 39. "Doe" Defendants one through 20 were responsible for classifying and assigning housing for Decedent, did not determine whether Decedent was at risk, exhibited deliberate indifference by closing the windows and doors of the correctional officers' booth and by not walking the halls every 30 minutes as prescribed, failed to search persons entering facilities for contraband, failed to search the cell in which Decedent was housed for contraband, and failed to follow appropriate policies, training, standards, and procedures, including the CDCR's operating manual. *Id.* ¶¶ 42-45, 50-52.

"Doe" Defendants one through 20 were responsible for supervising inmates, including by monitoring CCTV cameras which provided a live video feed of Decedent's cell to a control room, and failed to do so. *Id.* ¶¶ 53-55, 60. Said Defendants "were not making their usual inspections of the cells every 30 minutes and did not discovery [Decedent's] body for [one] to 1.5 hours by which time[] [Decedent] had extreme blood loss due to the multiple stab wounds inflicted by [Perez]." *Id.* ¶ 58. "Sometime after September 19, 2024, it was reported that [Perez] had been charged with felony murder[] related to the death of [Decedent]." *Id.* ¶ 64.

## II.   Governing Authority

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility

4

requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

### III.    **Discussion**

In the FAC, Plaintiffs assert the following claims under 42 U.S.C. § 1983: (1) deliberate indifference under the Fourteenth Amendment to the U.S. Constitution (against all Defendants); (2) interference with familial association under the Fourteenth Amendment (against all Defendants); and (3) interference with familial association under the First Amendment (against all Defendants). (Doc. 7 at 19-23)

Under state law, Plaintiffs assert the following claims: (4) failure to summon medical care under Cal. Gov. Code § 845.6 (against all Defendants); (5) Cal. Civ. Code § 52.1 (against all Defendants); (6) intentional infliction of emotional distress (against all Defendants); (7) negligence – Cal. Govt. Code § 820 (against all Defendants); and (8) wrongful death (against all Defendants). *See id.* at 23-34.

Turning to Defendants' motion, to state a claim under section 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. *Benavidez v. Cnty. of San Diego*, 993 F.3d

1134, 1144 (9th Cir. 2021) (citing *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *West v. Atkins*, 487 U.S. 42, 48 (1988)).  This requires a plaintiff to demonstrate that each defendant personally participated in the deprivation of his rights.  *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007).

### A.  State Entity Defendants

#### i.  *CDCR – Federal Claims*

Defendants argue that CDCR is immune from suit under the Eleventh Amendment as, absent waiver by the state or a valid override of immunity by Congress, a damages action against a state in federal court, and any pendent state law claims included therein, are barred given that CDCR has not consented to this lawsuit.  (Doc. 9 at 17-18).  Defendants argue that CDCR is not a "person" for purposes of claims under section 1983 and, further, California Government Code § 844.6 immunizes CDCR from the state law claims.  *Id.* at 18-19.  Plaintiffs oppose dismissal of CDCR on the grounds that the Eleventh Amendment "does not protect CDCR from claims for prospective injunctive relief."  (Doc. 11 at 7; citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).  Additionally, Plaintiffs argue that California Government Code § 844.6(d) "triggers CDCR's liability under § 815.2(a)."  *Id.* at 8.

The CDCR, as an agency of the state of California, has Eleventh Amendment immunity from suits for damages arising under federal law.  *Brown v. California Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009); *see Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999) ("The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court and the Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity.") (citations and quotations omitted).  Additionally, the CDCR is not a "person" within the meaning of section 1983.  *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004) ("State agencies (such as Caltrans) are not "persons" within the meaning of § 1983, and are therefore not amenable to suit under that statute."); *see Haack v. California Dep't of Corr. & Rehab.*, No. CV F 12-0098, 2012 WL 570353, at *4 (E.D. Cal. Feb.

21, 2012) ("CDCR is correct that as an arm of the State of California, CDCR is not subject to section 1983 claims.").

An important distinction exists where state officials are sued in their official capacities. Such a suit, generally, is no different from a suit against the state itself and, thus, state officials sued in their official capacity are entitled to immunity. However, when a state official is named in their official capacity in an action for prospective injunctive relief, that state official is considered a "person" for purposes of section 1983 and the Eleventh Amendment does not bar those claims. *Flint v. Dennison*, 488 F.3d 816, 824-825 (9th Cir. 2007) (citing, *inter alia*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), & *Ex parte Young*, 209 U.S. 123 (1908)).

Regarding prospective injunctive relief, Defendants correctly note (*see* Doc. 12 at 3) that, in the FAC, Plaintiffs do not seek any injunctive relief as to CDCR. Nor do Plaintiffs name any state officials in their official capacities as defendants. *See* (Doc. 7). Though it may be possible that Plaintiffs could be entitled to injunctive relief as to CDCR, if Plaintiffs seek such relief, they must demonstrate standing under Article III of the U.S. Constitution, which requires, among other things, a showing that they are likely to suffer future harm of a similar kind. *See Ethridge v. California Dep't of Corr. & Rehab.*, No. 25-cv-1452 JLS (KSC), 2025 WL 1908403, at *3 (S.D. Cal. July 10, 2025); *see also Moore v. Macomber*, No. 3:25-cv-2980-AJB-BLM, 2026 WL 296149, at *5 (S.D. Cal. Feb. 4, 2026) ("for the prospective injunctive relief exception to Eleventh Amendment immunity to apply, the plaintiff must establish a continuing violation of federal law.") (citations and quotations omitted).

Thus, Defendants' motion will be granted as to the dismissal of Defendant CDCR for all federal claims.

### ii. *KVSP – Federal Claims*

Defendants assert that KVSP is not an entity capable of being sued. (Doc. 9 at 16-17). Plaintiffs respond by noting that KVSP is an "entity that operates a maximum security prison" and is thus an "instrumentality of the state and is liable to the same extent as CDCR." (Doc. 11 at 14-15).

KVSP is an improper defendant because it is immune for the same reasons discussed *supra* regarding CDCR.  KVSP is a state prison and, therefore, Eleventh Amendment immunity bars suits against it.  *See McMann v. Pelican Bay State Prison*, No. C 95-3248 MHP, 1995 WL 705127, at *1 (N.D. Cal. Nov. 16, 1995) ("The first obstacle to plaintiff's suit is the fact that the defendant, Pelican Bay State Prison, is immune from suit … This Eleventh Amendment immunity extends to suits against a state agency, including a state prison.") (citing, *inter alia*, *Allison v. California Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969)); *Howard v. Parks*, No. 1:24-cv-00285-SAB (PC), 2024 WL 4977108, at *3 (E.D. Cal. May 7, 2024) ("Because claims under 42 U.S.C. § 1983 against CDCR and Wasco State Prison are barred by the Eleventh Amendment, they are not proper Defendants in this action."); *Durham v. California (Solano State Prison)*, No. CIV S-09-0331, 2010 WL 2889072, at *1 (E.D. Cal. July 21, 2010), *report and recommendation adopted*, No. 2:09-cv-00331, 2010 WL 3786811 (E.D. Cal. Sept. 27, 2010) ("defendant the State of California (Solano State Prison) is immune from liability in a § 1983 damages claim").

Thus, Defendants' motion will be granted as to the dismissal of Defendant KVSP for all federal claims.

### iii.   *CDCR and KVSP – State Law Claims*

Plaintiffs allege that Decedent was incarcerated in custody of CDCR at the time of the events at issue in this action.  *See* (Doc. 7).  California Government Code § 844.6 extends to public entities immunity from liability for injuries to prisoners.  *Cooks v. Cal. Dep't of Corr. & Rehab.*, No. 2:20-cv-1780 KJN P, 2022 WL 2110761, at *2 (E.D. Cal. June 10, 2022), *report and recommendation adopted sub nom. Cooks v. Dep't of Corr. & Rehab.*, No. 2:20-cv-01780 DAD KJN PC, 2022 WL 4096654 (E.D. Cal. Sept. 7, 2022) (citing, *inter alia*, *Castaneda v. Cal. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1069 (2013)).  "[S]overeign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute." *Id.* (citation omitted).  The exceptions to immunity are limited.  However, California "courts have held that the liability imposed on a public entity by Section 845.6 exists notwithstanding the broad immunity provided by Section 844.6." *See* Cal. Gov't Code § 844.6 (notes to 1970 Amendment); *Castaneda*, 212 Cal. App. 4th at 1070 ("Thus, section 845.6 creates out of the general immunity a

limited cause of action against a public entity for its employees' failure to *summon* immediate medical care only.") (emphasis in original).

There are no such exceptions for claims of negligence, intentional infliction of emotional distress, or wrongful death, nor claims brought under the Bane Act. *See Love v. Salinas*, No. 2:11-cv-00361-MCE, 2013 WL 4012748, at *14 (E.D. Cal. Aug. 6, 2013) (dismissing, at summary judgment stage, negligence claims against CDCR due to immunity); *Wright v. State of California*, 122 Cal. App. 4th 659, 672 (2004) ("The State and the Department, as public entities, are immune from liability for Wright's counts of intentional infliction of emotional distress and negligence."); *Campos v. Cnty. of Kern*, No. 1:14-cv-01099-DAD-JLT, 2017 WL 915294, at *16 (E.D. Cal. Mar. 7, 2017), *aff'd sub nom. K. E. C. by & through Gonzalez v. Cnty. of Kern*, 788 F. App'x 506 (9th Cir. 2019) ("On summary judgment, plaintiff has simply not offered any evidence indicating that there was a failure to furnish decedent immediate medical care in violation of § 845.6. Accordingly, defendant Kern County enjoys immunity with respect to plaintiff's wrongful death claims under § 844.6."); *Towery v. State of California*, 14 Cal. App. 5th 226, 231 (2017), *as modified* (Aug. 14, 2017) (noting the Bane Act does not provide an exception to immunity under section 844.6); *cf. Noriega v. Cnty. of San Bernardino*, No. ED CV24-00170 JAK (DTBX), 2024 WL 4799131, at *4 (C.D. Cal. Sept. 19, 2024) (finding immunity inapplicable where medical negligence claim and wrongful death claim both alleged failure to provide medical care).

Additionally, Plaintiffs' assertion regarding section 844.6 triggering CDCR's vicarious liability via section 815.2 is without merit. The exception to immunity in section 844.6(d) applies to "a public employee." "Although a public entity may be vicariously liable for the acts and omissions of its employees (Gov. Code, § 815.2), that rule does not apply in the case of injuries to prisoners." *Lawson v. Superior Ct.*, 180 Cal. App. 4th 1372, 1383 (2010) (noting the statutory exception to section 844.6 in section 845.6).

Thus, regarding dismissal of CDCR and KVSP as to state law claims and as discussed further *infra*, Defendants' motion will be denied as to the fourth cause of action and granted as to the fifth, six, seventh, and eighth causes of action.

**B. Plaintiffs Fail to Name Any Proper Defendant for Claims of Municipal Liability**

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Local governments are responsible only for their own illegal acts; they are not vicariously liable for their employees' actions. *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

A municipality is held liable only when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell*, 436 U.S. at 691. This "official municipal policy" need not be expressly adopted, "[i]t is sufficient that the constitutional violation occurred pursuant to a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citation and quotations omitted). A policy can also be one of action or inaction, such as a failure to train employees when such omissions amount to the government's policy. *See Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1189 (9th Cir. 2006) ("[A] county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference[.]").

Thus, to establish a § 1983 claim for municipal liability, Plaintiff must show: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Burke v. County of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009).

Plaintiffs do not assert a standalone cause of action for municipal liability but, rather, include these claims within the three causes of action pled under section 1983 in the FAC. *See* (Doc. 7 at 19-23). Defendants argue that claims based on municipal liability should be dismissed as Defendants are not municipalities. (Doc. 9 at 18). Plaintiffs state that KVSP is a "municipal agency." (Doc. 11 at 14).

As noted *supra*, Plaintiffs are incorrect. KVSP is a state entity that is immune from suit for federal claims as asserted herein, as is CDCR. The remaining defendants for the federal claims are Defendant Pfeiffer and the individual "Doe" Defendants. Thus, Plaintiffs fail to name any proper entity as a defendant for any claims of municipal liability. Accordingly, Defendants' motion will be granted as to dismissal of the claims of municipal liability.

### C. Supervisory Liability Claims

#### i. *Legal Standard*

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see*, *e.g.*, *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (noting that liability attaches if the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that a subordinate did"), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009); accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

11

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### ii. *Analysis*

Plaintiffs assert supervisory liability claims pursuant to section 1983 against Defendant Pfeiffer. (Doc. 7 at 19-23). As with their purported claims of municipal liability, Plaintiffs do not assert a standalone cause of action thereto but, rather, include supervisory liability claims within the three causes of action pled under section 1983 in the FAC. *See id.*

Plaintiffs argue that, as warden of KVSP,[2] Defendant Pfeiffer maintained "inadequate policies and customs relating to classification and housing assignment of inmates," was aware of and permitted "contraband entering and remaining within correctional facilities" and did not maintain adequate policies regarding searches prior to entry to facilities, maintained deficient policies and customs related to monitoring and supervision of inmates, and failed to implement practices and customs consistent with state law and industry standards. *Id.* ¶¶ 14, 67-70. Additionally, Plaintiffs allege that Defendant Pfeiffer did not meaningfully train personnel, failed to hold personnel accountable, should have been aware of the need to implement new policies or customs due to obvious inadequacy, and that these policies and customs were the moving force behind the violations against Decedent. *Id.* ¶¶ 71-73. These allegations are the same as those that Plaintiffs advanced regarding the *Monell* claims; indeed, each allegation names not only Defendant Pfeiffer but also CDCR, KVSP, and the state of California (which is not otherwise named as a defendant). *See id.* ¶¶ 67-73.

---

[2] It is unclear from the FAC whether Defendant Pfeiffer was, in fact, warden of KVSP at the time of the incident. *Compare* (Doc. 7 ¶ 14) *with* (Doc. 7 ¶ 66).

First, as noted *infra*, Plaintiffs fail to plead any cognizable claims under the proper authority as to the individual "Doe" Defendants.  It follows that Plaintiffs, thus, fail to adequately allege any acquiescence from Defendant Pfeiffer in such claims.

Second, Plaintiffs do not identify any particular policy, custom, or practice implemented by Defendant Pfeiffer that was so deficient that the policy itself is a repudiation of the constitutional rights at issue and is the moving force of the constitutional violations alleged herein.  Rather, Plaintiffs make only conclusory and general allegations that Defendant Pfeiffer ratified or maintained unconstitutional policies.

Third, the factual pleadings offered by Plaintiffs in support of the *Monell* claims do not, by themselves, support supervisory liability claims.  To credit such allegations, alone, as supporting supervisory liability would, in effect, result in vicarious liability, which is impermissible in section 1983 actions.  *See Keates v. Koile*, 883 F.3d 1228, 1242 (9th Cir. 2018) ("Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution.") (quotation omitted).

Thus, Plaintiffs fail to plead cognizable claims against Defendant Pfeiffer under a theory of supervisory liability.  *See, e.g.*, *Est. of Miller v. Cnty. of Sutter*, No. 2:20-cv-00577-KJM-DMC, 2020 WL 6392565, at *14 (E.D. Cal. Oct. 30, 2020) ("The complaint here does not allege the Sheriff made any decisions about Miller's care.  It does little more than recite the elements of a claim for supervisory liability."); *Keates*, 883 F.3d at 1243 ("The complaint here does not allege that Carter was directly involved in the allegedly unconstitutional conduct or that he had knowledge of the constitutional deprivations and acquiesced in them.  Rather, the complaint makes conclusory allegations that Carter promulgated unconstitutional policies and procedures which authorized the particular conduct in this case and thus directly caused Koile's allegedly unconstitutional conduct.  These allegations do not suffice to state a claim of supervisory liability."); *Kidwell-Bertagnolli v. Cnty. of Sonoma*, No. 20-cv-03291-JSC, 2020 WL 4901197, at *4 (N.D. Cal. Aug. 20, 2020) ("These allegations, however, do not indicate that Sheriff Essick was 'directly involved in the allegedly unconstitutional conduct' which resulted in Mr. Bertagnolli's death or that 'he had knowledge of the constitutional deprivations and acquiesced in them.  Rather, the complaint makes

13

conclusory allegations that [Sheriff Essick] promulgated unconstitutional policies and procedures which authorized the particular conduct in this case and thus directly caused [Deputy Ordaz and Deputy 1-10's] allegedly unconstitutional conduct.'") (alterations in original; quoting *Keates*, 883 F.3d at 1243).

Accordingly, Defendants' motion will be granted as to dismissal of the claims of supervisory liability.

### D. Federal Claims Against "Doe" Defendants

#### i. *Deliberate Indifference Under the Fourteenth Amendment*

Defendants argue that Plaintiffs improperly bring their claims under the Fourteenth Amendment rather than the Eighth Amendment. Defendants assert that Decedent was incarcerated at KVSP, a state prison, since April 28, 2015, and it is "simply implausible to infer that [Decedent] was a pretrial detainee for more than nine years while housed in a maximum-security state prison." (Doc. 9 at 19). Plaintiffs respond that they may bring their claims under either the Eighth Amendment or the Fourteenth Amendment, and argue that Defendants' citation to *Castro*, 833 F.3d 1060, does not support Defendants' argument because *Castro* holds that detainees must bring failure to protect claims under the Fourteenth Amendment because they are not yet prisoners for the purposes of the Eighth Amendment. Plaintiffs relatedly argue that *Castro* does not hold that prisoners must assert claims akin to those Plaintiffs advance here pursuant to the Eighth Amendment. (Doc. 11 at 9-10).

Plaintiffs' argument is without merit. The Ninth Circuit in *Castro* squarely held that "[i]nmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, *if not yet convicted*, under the Fourteenth Amendment's Due Process Clause." *Castro*, 833 F.3d at 1067-1068 (emphasis added). The Ninth Circuit elaborated in *Mendiola-Martinez v. Arpaio* that "Eighth Amendment protections apply only once a prisoner has been convicted of a crime, while pretrial detainees are entitled to the potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016).

It follows that pretrial detainees, not yet convicted of any crime, are entitled to the more

expansive protections of the Fourteenth Amendment; those protections do not apply to convicted prisoners, who must seek recourse pursuant to the Eighth Amendment. *See Murran v. Dep't of Corr.*, No. 3:23-cv-00196-JMK, 2024 WL 69186, at *3 (D. Alaska Jan. 5, 2024) ("Constitutional claims brought by pretrial detainees arise under the Fourteenth Amendment and claims by convicted prisoners arise under the Eighth Amendment."); *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (noting that pretrial detainees' "rights arise under the Fourteenth Amendment's Due Process Clause"); *Lopez v. Nevada ex rel. Nevada Dep't of Corr.*, No. 2:21-cv-01161-ART-NJK, 2023 WL 6383616, at *4 (D. Nev. Sept. 29, 2023) (noting that a "pretrial detainee's claim [of] deliberate indifference is brought as a Due Process violation under the Fourteenth Amendment, while a prisoner's similar claim is a violation of the Eighth Amendment," and that the former is analyzed under a "purely objective standard" while the latter under a "partially *subjective* standard") (emphasis in original; citing, *inter alia*, *Castro*, 833 F.3d at 1068-1071, & *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602 (9th Cir. 2019)).

Plaintiffs assert in the FAC that KVSP is a maximum security institution, classified at level IV, and houses over 3,100 incarcerated individuals. (Doc. 7 ¶ 10). Plaintiffs do not identify Decedent's precise status at the time of the incident but allege that Decedent was booked into KVSP in April 2015 as a "detainee." Plaintiffs then state that Decedent was housed with Perez in September of 2024. *Id.* ¶¶ 23-24. As Plaintiffs do not plead in the FAC or argue or suggest in their opposition that Decedent was a pretrial detainee, the Court finds that Plaintiffs bring their claims of deliberate indifference under inapplicable authority, namely the Fourteenth Amendment.

Thus, Defendants' motion will be granted as to the individual claims in the first cause of action. In the event Plaintiffs seek to bring claims of deliberate indifference under the Fourteenth Amendment, they must set forth facts establishing that Decedent was, in fact, a pretrial detainee.

### ii. *Interference with Familial Association*

The Fourteenth Amendment protects liberty interests in the companionship between parents and children. "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. Cal. Dep't. of Corr. & Rehab.*, 726 F.3d 1062, 1075

(9th Cir. 2013).  "Only official conduct that shocks the conscience is cognizable as a due process violation … A prison official's deliberately indifferent conduct will generally 'shock the conscience' so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner."  *Id.* (citations and quotations omitted).

The Court finds that Plaintiff's second cause of action fails for the same reasons as noted above.  Namely, Plaintiffs have failed to allege cognizable claims under the proper authority that "Doe" Defendants exhibited deliberate indifference.  *See Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail*, 628 F. App'x 527, 528 (9th Cir. 2016) ("Recovery for a violation of the right to familial association is generally contingent on the existence of an underlying constitutional violation.  Therefore, because there is no evidence that either Undersheriff Mineau or Lassen County was deliberately indifferent to Parker's serious medical needs, Schwarz's claim for loss of familial association—which is predicated on their purportedly unconstitutional care of Parker—likewise fails as a matter of law.") (citation omitted); *Hernandez v. Cnty. of Santa Clara*, No. 19-cv-07888-EJD, 2020 WL 3101041, at *5 (N.D. Cal. June 11, 2020) ("The official conduct must 'shock the conscience,' which is a more demanding standard than deliberate indifference … the FAC fails to clear the lower bar of adequately alleging deliberate indifference …").

As to Plaintiffs' third cause of action, the "First Amendment also protects family relationships, that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life."  *Keates*, 883 F.3d at 1236 (quotations omitted; citing *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001)).  Though "there appears to be no Ninth Circuit case setting out specifically the conduct or elements that constitute violation of familial association under the First Amendment," courts generally apply the same standard as under the Fourteenth Amendment.  *Kaur v. City of Lodi*, 263 F.Supp.3d 947, 973-974 (E.D. Cal. 2017) (citation omitted); *see Est. of Valentine v. Cnty. of Merced*, No. 1:23-cv-01697-JLT-SAB, 2024 WL 4374303, at *32 (E.D. Cal. Oct. 2, 2024), *report and recommendation adopted*, No. 1:23-cv-01697-JLT-SAB, 2026 WL 77633 (E.D. Cal. Jan. 9, 2026).

Thus, Plaintiffs' third cause of action fails for the same reasons as Plaintiffs' second cause of action.

### E.  State Law Claims

#### i.  *California Government Code § 845.6*

California Government Code § 845.6 "imposes liability on the public employee and public entity when: (1) the public employee knows or has reason to know of the need, (2) for a prisoner's immediate medical care, and (3) fails to take reasonable action to summon such medical care. Liability under section 845.6 is established by serious and obvious medical conditions requiring immediate care." *Borges v. City of Eureka*, No. 15-cv-00846-YGR, 2017 WL 363212, at *18 (N.D. Cal. Jan. 25, 2017) (internal quotations and citations omitted) (citing *Watson v. State of California*, 21 Cal. App. 4th 836, 841 (1993), & *Castaneda*, 212 Cal. App. 4th at 1070).

A public employee and public entity are liable under section 845.6 only for a failure to summon medical care.  Any failure to provide further treatment, or to ensure further diagnosis, is not actionable under section 845.6. *Castaneda*, 212 Cal. App. 4th at 1072.

Here, Plaintiffs do not identify any basis for their section 845.6 claims aside from the alleged federal constitutional violations.  Plaintiffs do not plead any facts showing that "Doe" Defendants or Defendant Pfeiffer failed to summon medical care despite knowing, or having a reason to know, of such need.  On the contrary, the facts as alleged by Plaintiffs in the FAC appear to establish "Doe" Defendants summoning medical care when learning of a need for immediate care. *See* (Doc. 7 ¶¶ 28-29, 62).  As such, Plaintiffs fail to bring any cognizable claims under section 845.6 against any "Doe" Defendant and, therefore, fail to assert any cognizable claims of vicarious liability against the CDCR and KVSP.

#### ii.  *California Civil Code § 52.1 ("Bane Act")*

A plaintiff alleging a Bane Act claim "must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015) (citing Cal. Civ. Code § 52.1).  The claim must allege facts that would permit the drawing of an inference that the defendant had a specific intent to violate the constitutional right at

17

issue. *Id.* Specific intent may be shown by demonstrating that the defendant acted "in reckless disregard" of that right. *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 803 (2017), *as modified* (Nov. 17, 2017).

Several district courts, including judges of this Court, "have adopted the position that a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs ... adequately states a claim for relief under the Bane Act because deliberate indifference claims extend far beyond ordinary tort claims and have been associated with affirmatively culpable conduct." *Cravotta v. Cnty. of Sacramento*, 717 F. Supp. 3d 941, 964 (E.D. Cal. 2024) (quotations and citation omitted) (collecting cases).

Here, Plaintiffs do not identify any basis for their Bane Act claims aside from the alleged federal constitutional violations. As noted *supra*, Plaintiffs fail to adequately allege cognizable constitutional claims against "Doe" Defendants and Defendant Pfeiffer. Thus, Plaintiffs fail to plead any cognizable Bane Act claims against them. *See Cravotta*, 717 F. Supp. 3d at 965 ("Plaintiff has failed to sufficiently plead his deliberate indifference claim against the Officer Defendants. Thus, the Court finds he has also failed to plead a Bane Act claim against the Officer Defendants, and the Bane Act claim against them is dismissed.").

As discussed *supra*, CDCR and KVSP are immune from claims under the Bane Act unless such claims involve a failure to summon medical care. As Plaintiffs fail to allege any facts regarding a failure to summon medical care despite public employees knowing or having reason to know of an immediate need for medical care, the CDCR and KVSP are immune under section 844.6. *Cf. Brink v. Cnty. of San Diego*, No. 23CV1756 DMS (SBC), 2024 WL 3315992, at *8 (S.D. Cal. July 3, 2024) (discussing California statutory authority regarding county immunity from Bane Act claims, concluding that immunity does not attach where public employee knew or had reason to know that the prisoner was in need of immediate medical care and failed to take reasonable action to summon such care, and finding Bane Act claim against county cognizable where complaint alleged nurse defendants failed to summon medical care despite obvious symptoms).

///

18

### iii.   *Intentional Infliction of Emotional Distress*

To state a claim for intentional infliction of emotional distress under California law, a plaintiff must allege "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (quoting *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009)).   The conduct must be "so extreme and outrageous as to go beyond all possible [bounds] of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Butler v. Rueter*, No. 2:22-cv-01301 KJN P, 2023 WL 1991591, at *6 (E.D. Cal. Feb. 14, 2023) (quoting *Mintz v. Blue Cross of Cal.*, 172 Cal. App. 4th 1594, 1607 (2009)).

Plaintiffs do not assert any facts regarding extreme or outrageous conduct, beyond all possible bounds of decency, by "Doe" Defendants or Defendant Pfeiffer.  As noted *supra*, CDCR and KVSP are immune under section 844.6.  Thus, Defendants' motion will be granted as to the claims for intentional infliction of emotional distress.

### iv.   *Negligence*

A claim for negligence under California law requires a plaintiff to show that the defendant (1) had a legal duty to use reasonable care; (2) breached that duty; and that (3) the breach was the proximate cause of (4) the plaintiff's injury. *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). "In California, prison officials owe detainees a duty to protect them from foreseeable harm." *Cotta v. County of Kings*, 686 F. App'x 467, 469 (9th Cir. 2017) (citing *Giraldo v. Cal. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231 (2008)).  Unless the law provides otherwise, public employees are liable to the same extent as private persons, and "public entities are generally liable for injuries caused by the negligence of their employees acting in the scope of their employment." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013).

The Court acknowledges that the standard of culpability for a negligence claim is a "much lower level" than the standard for a deliberate indifference claim. *Cravotta*, 717 F. Supp. 3d at 967 (citing *Castro*, 833 F.3d at 1071).  Nevertheless, Plaintiffs' factual allegations do not assert a

cognizable theory of negligence against Defendant Pfeiffer. California state law provides that, "a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." Cal. Gov't Code § 820.8. Plaintiffs do not allege facts that Defendant Pfeiffer was involved in the incident at issue and, thus, fail to plead a cognizable negligence claim against Defendant Pfeiffer. *See Spencer v. Pulido-Esparza*, No. 1:20-cv-01176-JLT-GSA PC, 2023 WL 3342614, at \*14 (E.D. Cal. May 10, 2023), *report and recommendation adopted*, No. 1:20-cv-01176 JLT GSA PC, 2023 WL 5155835 (E.D. Cal. Aug. 10, 2023) ("Plaintiff has not alleged facts that Warden Sherman was involved in the incident that allegedly caused Plaintiff's injury, thus Plaintiff fails to allege a negligence claim against Warden Sherman.").

As to "Doe" Defendants, the first element of Plaintiffs' negligence is satisfied as "[t]here is a special relationship between jailer and prisoner, imposing on the former a duty of care to the latter." *Giraldo*, 168 Cal. App. 4th at 250. Plaintiffs allege that "Doe" Defendants breached their duty because they were responsible for classifying and assigning housing for Decedent, did not determine whether Decedent was at risk, closed the windows and doors of the correctional officers' booth, did not walk the halls every 30 minutes as prescribed, failed to search persons entering facilities for contraband, failed to search the cell in which Decedent was housed for contraband, and failed to follow appropriate policies, training, standards, and procedures, including the CDCR's operating manual. (Doc. 7 ¶¶ 42-45, 50-52). Plaintiffs also allege that "Doe" Defendants were responsible for supervising inmates, including by monitoring CCTV cameras which provided a live video feed of Decedent's cell to a control room, and failed to do so. *Id.* ¶¶ 53-55, 60. Plaintiffs assert that "Doe" Defendants "were not making their usual inspections of the cells every 30 minutes and did not discover [Decedent's] body for [one] to 1.5 hours by which time[] [Decedent] had extreme blood loss due to the multiple stab wounds inflicted by [Perez]." *Id.* ¶ 58. "Sometime after September 19, 2024, it was reported that [Perez] had been charged with felony murder[] related to the death of [Decedent]." *Id.* ¶ 64.

Thus, Plaintiffs plead facts that "Doe" Defendants breached their duty of care and that breach was the proximate cause of Decedent's death. As Plaintiffs bring cognizable claims of

negligence against the "Doe" Defendants, Defendants' motion will be denied as to dismissal of the seventh cause of action against "Doe" Defendants.[3]

### v. *Wrongful Death*

"The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *A.P. v. Cnty. of Riverside*, No. EDCV 14-01793-VAP (DTBx), 2015 WL 13914850, at *3 (C.D. Cal. Feb. 27, 2015) (emphasis omitted; citing *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006)). "To support a claim of negligent wrongful death under California law, a plaintiff must establish the standard elements of negligence: defendants owed a duty of care; defendants breached their duty; and defendants' breach caused plaintiff's injury." *Kabogoza v. Blue Water Boating, Inc.*, No. 2:18-cv-02722-JAM-KJN, 2019 WL 1517577, at *4 (E.D. Cal. Apr. 8, 2019) (quotations omitted; citing *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1231 (9th Cir. 2013)).

Under California law, "[t]he type of damages a plaintiff may recover in a claim for wrongful death are his own pecuniary loss, which may include (1) the loss of the decedent's financial support, services, training and advice, and (2) the pecuniary value of the decedent's society and companionship—but he may not recover for such things as the grief or sorrow attendant upon the death of a loved one, or for his sad emotions, or for the sentimental value of the loss.'" *Id.* (quotations omitted; citing *Quiroz*, 140 Cal. App. 4th at 1264).

Plaintiffs' wrongful death claims against Defendant Pfeiffer fail for the same reasons as their negligence claims and, as noted *supra*, CDCR and KVSP are immune under section 844.6. As Plaintiffs state a cognizable claim of negligence against "Doe" Defendants and assert that Decedent's death resulted therefrom, Plaintiffs allege a cognizable wrongful death claim against the "Doe" Defendants.

---

[3] Although the negligence and wrongful death causes of action are not dismissed as to the "Doe" Defendants, it is unlikely the Court would exercise supplemental jurisdiction over these claims given dismissal of the section 1983 claims against all Defendants, unless Plaintiffs amend their complaint to cognizably plead their section 1983 causes of action. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

However, Plaintiffs may not normally seek punitive damages under California law for their wrongful death claim. *See Zion v. Cnty. of Orange*, No. SACV 14-1134 JVS (RNBx), 2014 WL 12798107, at *5 (C.D. Cal. Nov. 17, 2014) (noting "punitive damages are not available in a statutory wrongful death action under California law"). Plaintiffs assert that Cal. Civ. Code § 3294(d) permits recovery of punitive damages for wrongful death claims which resulted from a homicide for which the defendant has been convicted of a felony, and Perez may be convicted of a felony in the future. (Doc. 11 at 15).

Under the plain language of the statute, punitive damages are only available for wrongful death claims where a defendant has been convicted of a felony. *See* Cal. Civ. Code § 3294 ("… based upon a death which resulted from a homicide for which the defendant has been convicted of a felony …"). Plaintiffs concede that Perez has not yet been convicted of a felony. (Doc. 11 at 15). Additionally, Perez is no longer a defendant in this action. *See* (Doc. 20). Thus, Plaintiffs cannot recover punitive damages based on the plain language of section 3294(d). *See Langley v. Guiding Hands Sch., Inc.*, No. 2:20-cv-00635-TLN-KJN, 2021 WL 1212713, at *9–10 (E.D. Cal. Mar. 31, 2021) ("Plaintiffs argue the Court need not decide the issue now because Wohlwend may be convicted of felony manslaughter in connection with M.B.'s death in the future … Plaintiffs also apparently concede that Wohlwend has not yet been convicted of a felony. As such, Plaintiffs cannot recover punitive damages according to the plain language of § 3294(d). Plaintiffs do not provide any other basis for punitive damages.")

Thus, Plaintiffs' request for punitive damages for the wrongful death claims will be stricken.

### F. Leave to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires" as the purpose of the Rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). However, courts may, in their discretion, choose to decline leave to amend due to futility, bad faith, undue delay, prejudice to the opposing parties, dilatory motive or conduct, or a repeated failure to cure deficiencies by amendments. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–893 (9th Cir. 2010). A court's discretion in denying leave to amend is

22

particularly broad after plaintiff has already been afforded an opportunity to amend the complaint. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016).

Here, Plaintiffs request leave to amend if any portion of Defendants' motion is granted. (Doc. 11 at 15). The Court finds that the above deficiencies may be remedied by amendment and will extend leave to amend.

\* \* \* \* \*

As the Court has found Plaintiffs fail to cognizably plead any state law claims against Defendant Pfeiffer, the Court will not reach Defendants' arguments regarding California Government Code § 951. (Doc. 9 at 29). Additionally, as Plaintiffs' do not expressly seek attorney's fees for any state causes of action besides the Bane Act, the Court will not reach Defendants' arguments regarding attorney's fees. *Id.* at 30; *see* (Doc. 7 at 34).

### IV.    **Conclusion and Order**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (Doc. 9) is GRANTED in part:

   a. The motion is GRANTED as to dismissal of Defendants CDCR and KVSP from all federal causes of action (*i.e.*, the first, second, and third causes of action) and from the fifth, six, seventh, and eighth causes of action;

   b. The motion is DENIED as to dismissal of CDCR and KVSP from the fourth cause of action;

   c. The motion is GRANTED as to dismissal without prejudice of all claims of municipal liability and supervisory liability;

   d. The motion is GRANTED as to dismissal without prejudice of all claims in the first, second, third, fourth, fifth, and sixth causes of action;

   e. The motion is GRANTED as to dismissal of the seventh cause of action against Defendant Pfeiffer and DENIED as to dismissal against "Doe" Defendants;

   f. The motion is GRANTED as to dismissal of the eighth cause of action against Defendant Pfeiffer and DENIED as to dismissal against "Doe" Defendants;

23

g.  The motion is GRANTED as to striking of punitive damages from the eighth cause of action; and

2. Plaintiffs are granted leave to amend all claims dismissed without prejudice.

3. **Within 21 days** of entry of this order, Plaintiffs SHALL FILE any second amended complaint.

4. Defendants SHALL file their response to any second amended complaint consistent with Fed. R. Civ. P. 15(a)(3).

IT IS SO ORDERED.

Dated:   **April 15, 2026**

_____
UNITED STATES MAGISTRATE JUDGE